UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CIT BANK, N.A.,

                                        Plaintiff,

                                                                **REPORT &**
                                                                **RECOMMENDATION**
              -against-                                         18-CV-476-CBA-SJB

STEVEN MCDONNELL A/K/A STEVE
MCDONNELL A/K/A STEPHEN MCDONNELL,
PUBLIC ADMINISTRATOR OF NASSAU COUNTY
AS LIMITED ADMINISTRATOR OF THE ESTATE
OF GEORGE ANDREW FOX A/K/A GEORGE FOX,
DECEASED, KAREN MCDONNELL INDIVIDUALLY
AND AS HEIR AND DISTRIBUTEE OF THE ESTATE
OF GEORGE ANDREW FOX, PATRICIA VIVIRITO
AS HEIR AND DISTRIBUTEE OF THE ESTATE OF
GEORGE ANDREW FOX, DEBRA FOX AS HEIR
AND DISTRIBUTEE OF THE ESTATE OF GEORGE
W. FOX AND AS HEIR AND DISTRIBUTEE OF THE
ESTATE OF GEORGE ANDREW FOX, CHRISTINA
FOX LORD AS HEIR AND DISTRIBUTEE OF THE
ESTATE OF GEORGE W. FOX AND AS HEIR AND
DISTRIBUTEE OF THE ESTATE OF GEORGE
ANDREW FOX, MICHAEL FOX AS HEIR AND
DISTRIBUTEE OF THE ESTATE OF GEORGE W.
FOX AND AS HEIR AND DISTRIBUTEE OF THE
ESTATE OF GEORGE ANDREW FOX, CACH LLC,

                                        Defendants.
----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

          CIT Bank, N.A. ("CIT") initiated this litigation to foreclose upon 40 Satterie

Avenue, Valley Stream, New York 11580 (the "Subject Property").  (Am. Compl. dated

Mar. 25, 2019 ("Am. Compl."), Dkt. No. 21 ¶ 1).  On March 14, 2022, CIT filed a

combined motion for summary judgment and default judgment, (Mot. for Summ. J. &

Default J. dated Mar. 14, 2022 ("Pl.'s Mot."), Dkt. No. 74), which the Honorable Carol

Bagley Amon referred to the undersigned for a report and recommendation. (Order Referring Mot. dated Aug. 22, 2022).

For the reasons stated below, it is respectfully recommended that the motion for summary judgment be denied due to CIT's failure to establish compliance with section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"), but the default judgment motion be granted in part. The Court separately grants CIT's motion to have U.S. Bank substituted as plaintiff.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

On or about June 22, 2007, Steven McDonnell and George Andrew ("A.") Fox (together, the "Borrowers") executed a Note with IndyMac Bank, F.S.B. ("IndyMac") in the principal amount of $352,000. (Pl.'s Loc. R. 56.1 Statement of Material Facts ("Rule 56.1 Stmt."), Dkt. No. 74 ¶ 4; Am. Compl. ¶ 18; Note dated June 22, 2007 ("Note"), attached as Ex. A to Pl.'s Mot.). As security for the Note, the Borrowers along with Defendant Karen McDonnell (together, the "Mortgagor Defendants") executed a Mortgage on the Subject Property in the same amount; the mortgage was recorded on August 20, 2007. (Rule 56.1 Stmt.¶ 5; Mortgage dated June 22, 2007 ("Mortgage"), attached as Ex. B to Pl.'s Mot.). On February 26, 2010, Steven McDonnell executed a Home Affordable Loan Modification Agreement that modified the original terms of the Note and Mortgage. (Rule 56.1 Stmt. ¶ 7; Loan Modification Agreement, attached as Ex. D to Pl.'s Mot.). The Mortgage was subsequently assigned to CIT Bank, N.A. (Rule 56.1 Stmt. ¶¶ 6, 9; Am. Compl. ¶ 23). Following the commencement of this litigation, CIT's interest was transferred to MTGLQ Investors, LP, whose interest was subsequently transferred to U.S. Bank Trust National Association ("U.S. Bank"). (Rule 56.1 Stmt. ¶ 13; *see* Assignments of Mortgage, attached as Ex. E to Pl.'s Mot.). U.S. Bank has been

in possession of the Note since June 30, 2021. (Rule 56.1 Stmt. ¶ 14; Aff. of Louis Levithan in Supp. of Mot. for Summ. J. dated Jan. 31, 2022, Dkt. No. 74 ¶ 8).

Beginning with the payment due on June 1, 2015 and subsequent payments thereafter, the Borrowers failed to make any payments due under the Note. (Rule 56.1 Stmt. ¶ 8; Am. Compl. ¶ 32). Each failure to pay constituted a default under the Note. (Note ¶ 7(B); Am. Compl. ¶¶ 28–33). On September 25, 2017, pursuant to Paragraphs 15 and 22 of the Mortgage, notices were mailed to the Mortgagors informing them of their default (the "Notices of Default"). (Mortgage ¶¶ 15, 22; Notices of Default, attached as Ex. 7 to Aff. of Kemberly Pitcher dated Mar. 13, 2020 ("Pitcher Aff."), Dkt. No. 74). The next day, 90-day foreclosure notices were sent to the Mortgagors at the Subject Property warning them that they were at risk of losing the Subject Property. (Rule 56.1 Stmt. ¶ 11; 90-Day Notices, attached as Ex. 3 to Pitcher Aff.). The Borrowers failed to cure the defaults. (Aff. of Nik Fox in Supp. of Summ. J. ("Fox Aff."), Dkt. No. 74 ¶ 11; Loan Payment History, attached as Ex. F to Pl.'s Mot.).

George A. Fox died on December 6, 2008. (Death Transcript, attached as Ex. D to Pl.'s Mot.). He died intestate, and the Public Administrator of Nassau County was appointed by the Surrogate's Court.[1] (*See* Limited Letters of Administration dated July 10, 2017 ("Limited Letters"), attached as Ex. C to Suppl. Decl. dated Oct. 21, 2022 ("Suppl. Decl."), Dkt. No. 81). Distributees of the Estate of George A. Fox identified in the Amended Petition for Limited Letters—Karen McDonnell, George W. Fox, and

---

[1] The decree granting the Limited Letters contained the following scope: "To receive service of process for the foreclosure action to be brought by petitioner regarding real property known as and located at 40 Satterie Avenue, Valley Stream, New York 11580." (Limited Letters at 2).

Patricia Vivirito—and the Nassau County Public Administrator were named as defendants in the original Complaint, along with a judgement creditor, Cach LLC.[2]

George W. Fox then passed away on January 19, 2018 and was survived by his wife, Debra Fox, and his two children, Michael Fox and Christina Fox Lord.  (Death Certificate, attached as Ex. D to Suppl. Decl.; Family Tree Affidavit, attached as Ex. E to Suppl. Decl.; Am. Compl. ¶ 25).  Those individuals—his heirs-at-law—were substituted for him as additional defendants in the Amended Complaint.[3]  Cach LLC, an entity that

---

[2] Under New York law, "[e]very person having an estate or interest in possession . . . and every person entitled to the . . . inheritance of the real property" is a necessary defendant in a foreclosure action.  N.Y. Real Prop. Acts. Law ("RPAPL") § 1311.  Where plaintiff's action forecloses on a mortgage executed by a deceased individual, the "proper manner to proceed . . . is to make a formal inquiry of . . . Surrogate Court, and if Surrogate's Court confirms that no will or estate has been filed, to make application for an administration proceeding and, if necessary, the appointment of the Public Administrator in the . . . Surrogate Court.  The Surrogate's Court may adopt a . . . public administrator to represent and identify any heirs, and service of the foreclosure action would then be made upon that administrator or guardian." *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Estate of Key*, 394 F. Supp. 3d 311, 314 (E.D.N.Y. 2019) (quotations and citations omitted).

[3] Counsel for CIT and its agent conducted various searches of the Nassau County Surrogate's Court's docket to ensure no will has been filed or probate proceedings held for George W. Fox.  (*See* Decl. in Resp. to Court's Order to Show Cause dated Nov. 18, 2022 ("Decl. in Resp. to OTSC"), Dkt. No. 85 ¶ 8; Surrogate Court Searches, attached as Exs. 5–6 to Decl. in Resp. to OTSC).  "[W]here a mortgagor/property owner dies intestate and the mortgagee does not seek a deficiency judgment, generally a foreclosure action may be commenced directly against the distributees, in whom title to the real property automatically vests." *NRZ Pass-Through Tr. IV v. Tarantola*, 192 A.D.3d 819, 821 (2d Dep't 2021) (quotations and citations omitted).  CIT submitted a sworn affidavit from Patricia Vivirito, sister of the decedent, identifying George W. Fox's surviving spouse as "Debbie" and his children as Christina Fox Lord and Michael Fox.  (*See* Family Tree Affidavit).  His death certificate also lists his wife Debra, and George A. Fox's obituary further corroborates these family relationships.  (*See* Death Certificate; Obituary, attached as Ex. A to Suppl. Decl.).  CIT has also confirmed that it seeks only to extinguish the rights of these individuals in the Subject Property, and not to obtain any deficiency judgment.  (Suppl. Decl. ¶ 7).  Based on the information provided by CIT, the Court concludes George W. Fox died intestate and CIT has identified all known distributees and named them as defendants.  N.Y. Est. Powers & Trusts Law § 4-1.1

has an interest in the Subject Property as a judgment creditor, was also named as a defendant. (Am. Compl. ¶ 11).

Each Defendant was served with a summons and the Amended Complaint. (Summonses Returned Executed, Dkt. Nos. 33–40; Affs. of Service dated Oct. 16, 2019, attached as Ex. K to Pl.'s Mot.). Steven McDonnell appeared *pro se* until he retained Mr. Singer as counsel in 2021. (Notice of Appearance dated Dec. 1, 2021, Dkt. No. 71). Default was entered against Karen McDonnell, (*see* Entry of Default dated May 7, 2021, Dkt. No. 59), but Mr. Singer's appearance, and opposition to the present motion, were filed on her behalf, following entry of the default. (*See* Notice of Appearance dated Dec. 1, 2021, Dkt. No. 71; Aff. of Stephen McDonnell ("McDonnell Aff."), Dkt. No. 76; Defs.' Mem. of Law in Opp'n to Pl.'s Mot. ("Defs.' Mem."), Dkt. No. 76). "[O]pposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). The factors to set aside a default—set forth in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993), namely "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a

---

(providing that the property of an intestate decedent survived by a spouse and issue is distributed as follows: "fifty thousand dollars and one-half of the residue to the spouse, and the balance thereof to the issue by representation"); *cf. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Sager*, No. 19-CV-2229, 2022 WL 4392668, at *3–*4 (E.D.N.Y. Sept. 23, 2022) ("[P]laintiff has reasonably established that [the decedent's] three surviving children are the apparent beneficiaries of her estate and have a demonstrable interest in the home. . . . Plaintiff's abandonment of any claim of a deficiency judgment greatly facilitates this determination. . . . Here, plaintiff conducted a diligent search to ascertain defendant's heirs and the lawful distributees. Plaintiff's agent reviewed public records, ran skip trace searches, located decedent's obituary, and interviewed decedent's heirs. . . . Neither the plaintiff, this Court, nor defendant's counsel has found any record of probate proceedings relating to defendant. After this exhaustive search, it appears defendant died intestate[.]").

meritorious defense is presented"—weigh in favor of vacating the default. There is little evidence of prejudice because the same standards under the RPAPL pertaining to Steven McDonnell—who has appeared, not defaulted, and contests foreclosure—apply with equal force to Karen McDonnell, a signatory of the Mortgage. And given the denial of summary judgment as to Steven, permitting Karen to defend on the merits causes no additional delay. Finally, a meritorious defense is clearly present for Karen in light of the Court's finding that CIT failed to comply with § 1304. The Court's preference is to resolve cases on the merits, not on default. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (noting that the Second Circuit has "expressed a strong preference for resolving disputes on the merits" (quotations omitted)). The Court therefore recommends the default against Karen McDonnell be vacated by the Clerk and treats the present motion against her as one for summary judgment. *See, e.g.*, *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (vacating entry of default where plaintiff would suffer no prejudice from vacatur and defendant's opposition to the motion "presented facts which, if credited, would constitute a complete defense").

The remaining Defendants failed to appear, and the Clerk of Court entered default against them on May 7, 2021. (Entry of Default dated May 7, 2021, Dkt. No. 59).

CIT first filed a motion for summary judgment against Steven McDonnell on April 30, 2020. (Mot. for Summ. J. dated Apr. 30, 2020, Dkt. No. 53). The motion was denied without prejudice, and the case was stayed pending the resolution of *CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir. 2020). *CIT Bank, N.A. v. McDonnell*, No. 18-CV-476, 2020 WL 13157556, at *1 (E.D.N.Y. June 10, 2020). After the stay was lifted, CIT filed a second motion for summary judgment, which it ultimately withdrew. (*See*

Order dated Oct. 26, 2021). CIT then filed the present dual motion for summary judgment and default judgment, which was referred to the undersigned for a report and recommendation. (Pl.'s Mot.; Order Referring Mot. dated Aug. 22, 2022). The motion was opposed by Mr. Singer on behalf of both McDonnells. (*See* McDonnell Aff.; Defs.' Mem.).

CIT also filed an affirmation of service indicating that the motion for default judgment and supporting papers were mailed to the defaulting defendants in compliance with Local Rule 55.2. (Affirmation of Service dated Jan. 31, 2022, attached as Ex. 25 to Pl.'s Mot.). The Court issued two orders seeking additional materials and clarification about the procedural background of the case, (*see* Order dated Oct. 7, 2022; Order to Show Cause dated Nov. 8, 2022), and responses by CIT were timely filed and served on all the Defendants. (Suppl. Decl.; Affirmation of Service dated Oct. 21, 2022; attached as Ex. 6 to Suppl. Decl.; Affirmation of Service dated Nov. 16, 2022, Dkt. No. 84; Affirmation of Service dated Nov. 18, 2022, attached as Ex. 7 to Decl. in Resp. to OTSC).

For the reasons stated below, it is respectfully recommended that CIT's motion for summary judgment be denied against the McDonnells; and default judgment be granted against each of the other Defendants, except for Cach LLC.

DISCUSSION

I. <u>Summary Judgment</u>

A. <u>Legal Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations," "admissions, interrogatory answers, or other materials."  *Id.* 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Furthermore, in moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or if controverting any fact, responding to each assertion.  *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts

from the need to hunt through voluminous records without guidance from the parties."

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

"Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts." *United States v. Kadoch*, No. 96-CV-4720, 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 716894, at *1 (Mar. 5, 2012). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73; *Pensionsversicherungsanstalt v. Greenblatt*, 556 F. App'x 23, 25 (2d Cir. 2014) ("[N]othing requires a district court to deem evidence admitted, or grant summary judgment, simply because a non-movant fails to comply with . . . Local Rule 56.1."). Thus, despite the McDonnells' failure to submit a counterstatement in response to CIT's statement of undisputed material facts, the Court proceeds to the merits and conducts an independent review of the record as a whole, including the evidence in support of CIT's Rule 56.1 statement, and drawing all reasonable inferences in favor of the McDonnells, the non-moving parties.[4] *See Holtz*, 258 F.3d at 73 ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (quotations omitted));

---

[4] While CIT asks the Court to disregard their opposition entirely, (Reply ¶ 3), the Court declines to do so. At an earlier stage of the case, the Court reminded CIT of its own obligation to submit a Rule 56.1 statement after it neglected to file one. (*See* Order dated Oct. 20, 2021).

*e.g.*, *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 82 & n.1 (2d Cir. 2022); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

For the reasons indicated below, it would be inappropriate to grant summary judgment against the McDonnells.

B. <u>Liability</u>

CIT seeks summary judgment against the McDonnells. They oppose summary judgment on the grounds that CIT failed to strictly comply with the statutory notice requirements of RPAPL § 1303–1304. (Defs.' Mem. at 1). The Court agrees that there is a material issue of fact regarding compliance with sections of the New York Real Property Law.

> Section 1304 of the RPAPL requires that, at least 90 days before commencing a home foreclosure action, a notice of default on the mortgage loan be sent by registered or certified mail and also by first-class mail to the last known address of the borrower,[5] and to the residence that is subject to the mortgage. Section 1304 also prescribes the contents of the notice.

---

[5] The 90-day notice requirements of RPAPL § 1304 are inapplicable to George A. Fox, who died 11 years prior to the commencement of this action, because upon his death he was not a "borrower" under the loan instrument. *See Windward Bora LLC v. Valencia*, No. 19-CV-4147, 2022 WL 872506, at *2 n.5 (E.D.N.Y. Mar. 24, 2022) (adopting report and recommendation); *United States through Farmers Home Admin., U.S. Dep't of Agric. v. Opportunities for Chenango, Inc.*, No. 18-CV-1230, 2020 WL 1025191, at *3 n.1 (N.D.N.Y. Mar. 3, 2020) ("[C]ourts have determined that the notice provision of N.Y. Real Prop. Acts. L. § 1304 does not apply to a deceased borrower because N.Y. Real Prop. Acts. L. § 1304 in particular requires the notice to be sent 'to the borrower.'" (citing *U.S. Bank, N.A. v. Levine*, 52 Misc. 3d 736, 737–38 (Sup. Ct. 2016))).

And to that end, CIT was not required to serve the 90-day notices on Fox's heirs. *Valencia*, 2022 WL 872506, at *2 n.5. However, Karen McDonnell was entitled to timely notice pursuant to § 1304, though she did not sign the underlying note, because the mortgage instrument explicitly designated her as "borrower" on the first page and next to her signature. *Bank of New York Mellon v. Forman*, 176 A.D.3d 663, 665 (2d Dep't 2019); *e.g.*, *HSBC Bank USA, Nat'l Ass'n v. DiBenedetti*, 205 A.D.3d 687, 689 (2d Dep't 2022) ("[A]lthough Denis DiBenedetti did not sign the note, he is considered a 'borrower' within the meaning of RPAPL 1304 because he was identified as such, both on the first page of the mortgage and beneath his signature. Thus, the notice requirements of RPAPL 1304 apply to Denis DiBenedetti." (citations omitted)); (*see* Mortgage at 1, 16).

*Windward Bora LLC v. Armstrong*, No. 18-cv-6355, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) (quotations and citations omitted). "Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)).

"Plaintiff cannot satisfy its burden with conclusory statements of compliance with RPAPL's requirements." *CIT Bank, N.A. v. Valerio*, No. 16-CV-6644, 2019 WL 7862489, at *4 (E.D.N.Y. Oct. 29, 2019) (quotations and citations omitted), *report and recommendation adopted*, 2020 WL 90831, at *3–*4 (Jan. 8, 2020). "In a residential foreclosure action, a plaintiff moving for summary judgment must tender sufficient evidence demonstrating the absence of material issues as to its strict compliance with RPAPL 1304." *Pennymac Corp. v. Levy*, 207 A.D.3d 735, 736 (2d Dep't 2022) (quotations and citations omitted); *see also Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288, 2021 WL 2548971, at *5 (E.D.N.Y. June 22, 2021) ("[I]t is the movant who bears the burden on summary judgment to demonstrate that there is no material issue as to RPAPL § 1304 compliance[.]") (adopting report and recommendation).

CIT's Rule 56.1 statement alleges that it sent the McDonnells RPAPL § 1304 notices via certified and first-class mail to the Subject Property. (Rule 56.1 Stmt. ¶¶ 5, 11). Furthermore, CIT filed a sworn affidavit from its director outlining CIT's predecessor's ordinary business practices in the creation and mailing of 90-day notices. (Pitcher Aff. at 3). CIT also submitted copies of the 90-day notices dated September 26,

2017, certifications of service, and logs evidencing the mailings.  (90-Day Notices; Certifications of Mailing, attached as Ex. 5 to Pitcher Aff.; Mailing Logs, attached as Ex. 5 to Pitcher Aff.).  Attached are copies of five certified mailing envelopes—three of which contained the 90-day notices mailed to the Mortgagors—each with a barcode and a "Return to Sender" stamp dated October 18, 2017.  (Notice Envelopes dated Oct. 18, 2017, attached as Ex. 4 to Pitcher Aff.).  CIT also attached a copy of the proof of filing statement submitted to the Department of Financial Services as required by RPAPL § 1306.  (Proof of Filing Statement, attached as Ex. 6 to Pitcher Aff.).

The Court of Appeals of New York has "long recognized a party can establish that a notice or other document was sent through evidence of actual mailing . . . or . . . by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature." *CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550, 556 (2021) (citations omitted).  CIT's failure to demonstrate an absence of material fact regarding its compliance through either of these two methods precludes summary judgment.

Under the first—actual mailing—to demonstrate that the 90-day notice was mailed via certified and first-class mail to the McDonnells' last known residence, CIT could have relied upon "affidavits of mailing or domestic return receipts with attendant signatures." *Schiffman*, 948 F.3d at 533 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019)).  But CIT has not filed an affidavit of service or mailing, *i.e.*, an affidavit indicating the notice was mailed on a particular date.  The certifications of mailing signed on behalf of CIT's predecessor's bank mortgage servicing unit— unsworn and not notarized—do not constitute affidavits of service.  (*See* Certifications of Mailing).  *J & J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382, 2020 WL 1034393, at

*5 (E.D.N.Y. Feb. 6, 2020) ("The definition of 'affidavit' requires a declarant to swear to the declaration of facts. *See Black's Law Dictionary* 68 (10th ed. 2014) (defining 'affidavit' to mean '[a] voluntary declaration of facts written down and sworn to by a declarant [usually] before an officer authorized to administer oaths'). Thus, the certificates of service should have been sworn[.]"), *report and recommendation adopted*, 2020 WL 1031756, at *1 (Mar. 3, 2020)); *see also Kearney v. Kearney*, 42 Misc. 3d 360, 368 (Sup. Ct. 2013) ("Most . . . courts in New York[] would acknowledge . . . the equivalent of an 'affidavit of mailing' . . . [is] a sworn statement by someone acting on behalf of the lender in which the affiant attests that the notice required by section 1304 was actually mailed on a specific date and time to the address set forth on the envelope.").[6]  In any event, the certifications only aver that "the notice included with this certification was mailed on September 26, 2017" to the borrowers, without specifying which notice was mailed, who mailed the notice, or whether such notice was sent by first-class mail, certified mail, or both, which is required for section 1304 compliance. *Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288, 2019 WL 4014842, at *5 (E.D.N.Y. May 28, 2019) ("As the Sutton Affidavit does not affirm that Sutton personally mailed the 90-day notice to White, it does not amount to 'an affidavit of service of the actual mailing.'  Nor does Sutton name the individual who purportedly mailed the 90-day notice[.]" (citation omitted)), *report and recommendation adopted*, 2021 WL 2548971, at *5; *Deutsche Bank Nat'l Tr. Co. v. Dennis*, 181 A.D.3d 864, 867 (2d Dep't 2020) ("Blanchard did not aver that the notice was sent in the manner required pursuant to RPAPL 1304, *i.e.*, by certified mail and

---

[6] Nor do the unsworn certifications comply with 28 U.S.C. § 1746, because there is no indication they were subscribed by the declarant "as true under penalty of perjury."

first-class mail."). Nor has CIT submitted proof of mailing from USPS, (*e.g.*, a certificate of first-class mailing or certified domestic return mailing receipt), and it therefore fails to demonstrate absence of a material factual dispute about its compliance. *White*, 2019 WL 4014842, at *4.

CIT did attach copies of the notices with numbered barcodes in addition to the certified mailing envelopes, each of which has a tracking number and bears the marking "Return to Sender—Unclaimed—Unable to Forward." (*See* Notice Envelopes). This too is not enough. Bar codes are not the same as certified mailing receipts; and as such, bar codes alone are insufficient to provide proof of mailing. *See, e.g.*, *Wells Fargo Bank, N.A. v. Shields*, 201 A.D.3d 1007, 1010 (2d Dep't 2022) (holding that "plaintiff failed to eliminate questions of fact as to whether notices were sent to both defendants in compliance with RPAPL 1304" where the envelope was "marked 'return to sender illegible unable to forward' by the United States Post Office . . . [and] a certified mail return receipt card addressed to both of the defendants at the subject property's address" was not signed by a recipient); *Deutsche Bank Nat'l Tr. Co. v. Feeney*, 188 A.D.3d 997, 998 (2d Dep't 2020) ("A copy of a letter and envelope addressed to the defendant, each bearing a 20-digit number, was insufficient to eliminate all triable issues of fact as to whether the certified mailing actually occurred[.]"); *U.S. Bank Nat'l Ass'n v. Offley*, 170 A.D.3d 1240, 1242 (2d Dep't 2019) ("[T]he presence of numbered bar codes on the copies of the 90-day statutory notices submitted by the plaintiff did not suffice to establish, prima facie, proper mailing under RPAPL 1304[.]"); *CitiMortgage, Inc. v. Osorio*, 174 A.D.3d 496, 498 (2d Dep't 2019) ("The presence of 20-digit numbers on the copies of the 90-day notices submitted by the plaintiff, standing alone, did not suffice to establish, prima facie, proper mailing under RPAPL 1304[.]"); *White*, 2019 WL

4014842, at *5 ("Wilmington's submissions fail to adequately demonstrate compliance with RPAPL § 1304's mailing requirements. Plaintiff has not furnished any uncontroverted United States Postal Service records, such as certified mailing receipts or certificates of first-class mailing. Rather, Wilmington relies on copies of mailing labels that do not definitively establish that the 90-day notice was indeed mailed." (citation and quotations omitted)); *Freedom Mortg. Corp. v. Monteleone*, -- F. Supp. 3d --, No. 19-CV-1410, 2022 WL 4274936, at *6 (E.D.N.Y. Sept. 15, 2022) ("[T]he copies of notices attached to the affidavit contain mail bar codes, which are not the same thing as certified mailing receipts. It is well-established that bar codes alone do not establish proof of mailing." (citations omitted) (collecting cases)). Likewise, a proof of filing statement only establishes that CIT "has previously represented to others that it complied with RPAPL § 1304 but does not itself evince compliance." *White*, 2021 WL 2548971, at *5.

As a substitute for certified mailing receipts, courts in this District have taken judicial notice of tracking information from the USPS website. *See, e.g.*, *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154, 2022 WL 3648622, at *6 (E.D.N.Y. July 5, 2022) ("While Plaintiff technically did not submit certified mailing receipts or an affidavit of service to accompany the certified mailings, a simple visit to the USPS tracking website indicates that each certified letter was delivered. The Court finds this to be evidence of actual mailing in compliance with RPAPL § 1304." (footnote omitted)), *report and recommendation adopted*, 2022 WL 3647586, at *2 (Aug. 24, 2022). But that alternative does not suffice here because the tracking website cannot provide a status

update for the mailings in the case,[7] which suggests that mailings were only created, but not actually sent.

As for the second method to demonstrate compliance, a "lender may create a rebuttable presumption that it complied with § 1304 by submitting 'proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'" *Schiffman*, 999 F.3d at 116 (quoting *Conti-Scheurer*, 172 A.D.3d at 21). For the presumption to arise, the affidavit must be offered by "an employee with personal knowledge of the practices utilized by the [company] *at the time of the alleged mailing*." *Schiffman*, 36 N.Y.3d at 556 (alteration in original) (emphasis added) (quotations and citations omitted). As a threshold matter, it is unclear whether the affidavit supplied by Ms. Pitcher can meet this standard given that she has acquired her "personal knowledge of the procedure" by examining CIT's business records *after* the 90-day notices were mailed. (Pitcher Aff. at 2 ("In connection with making this Affidavit, I have acquired personal knowledge of the matters stated herein by examining these business records to the extent they relate to the Subject Loan.")).

But even if the presumption applies, the McDonnells have succeeded in rebutting that presumption. The presumption may be rebutted by a borrower's denial of receipt and a "showing that the routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed." *Schiffman*, 36 N.Y.3d at 557 (quotations omitted). There must be "proof of a material deviation from an aspect

---

[7] The Court attempted to input the tracking numbers listed on all three envelopes into *USPS Tracking*, USPS.COM, https://tools.usps.com/go/TrackConfirm (last visited Jan. 3, 2023). Each search yielded the result, "Label Created, not yet in system."

of the office procedure that would call into doubt whether the notice was properly mailed, impacting the likelihood of delivery to the intended recipient." *Id.*

Here, each of the logs submitted by CIT that it relies upon for proof of standard office procedures bears the notation "Mailed By: LenderLive Facility" under the "Transaction Information" heading. (*See* Mailing Logs). The logs appear to be records produced by LenderLive, Inc., a third-party vendor that mailed the notices on CIT's behalf. (*Id.*; Defs.' Mem. at 3–4). Yet Ms. Pitcher claims that it was CIT that created the 90-day notices, mailed the notices, and logged the information. (Pitcher Aff. at 3). She states that CIT's predecessor's ordinary business practice, and now CIT's practice, was to "send such letter by Certified Mail and First-Class Mail to the Borrowers at the last known address as reflected in Plaintiff's computerized record keeping system." (*Id.*). LenderLive is never mentioned. There is nothing untoward in using a third-party mailing service. But where an outside vendor or mortgage services provider does the actual mailing, the affidavit must certify familiarity with that entity's procedures. *See, e.g.*, *Aurora Loan Servs., LLC v. Vrionedes*, 167 A.D.3d 829, 832 (2d Dep't 2018) ("The affiant did not aver that she was familiar with the mailing practices and procedures of the entity that allegedly sent the RPAPL 1304 notice."); *Conti-Scheurer*, 172 A.D.3d at 21 (denying summary judgment where plaintiff's foreclosure affidavit "did not attest to knowledge of the mailing practices of Bank of America, the entity that allegedly sent the notices to the defendant"); *see also Bank of Am., N.A., v. Adaszewski*, 64 Misc. 3d 1239(A), at *8 (Sup. Ct. 2019) ("It is clear from each submission by plaintiff that the mailings here were actually done by Walz [('a subsidiary of LenderLive Services, LLC')] on behalf of plaintiff, not by plaintiff as its officer averred. . . . [P]laintiff's officer's

affidavit . . . does not establish her familiarity with the mailing practices and procedures used by Walz, the 'LenderLive Event-Mailed[.]'").

The fact that an entirely different entity actually mailed the notices indicates that there was a "material deviation" from CIT's established procedures that are detailed in the Pitcher Affidavit. And it certainly "casts doubt on the reliability of a key aspect of the process such that the inference that the notice was properly prepared and mailed is significantly undermined." *Schiffman*, 36 N.Y.3d at 557. This defect—coupled with the McDonnells' continual denial of receipt of the notices, (McDonnell Aff., ¶¶ 3, 5)— warrant denial of summary judgment. *E.g.*, *Ditech Fin., LLC v. Cummings*, 208 A.D.3d 634, 636 (2d Dep't 2022) (denying summary judgment where plaintiff failed to attach "any documents establishing that the notices were actually mailed" and the officer's affidavit "did not attest to knowledge of the mailing practices of the plaintiff, which was the entity that allegedly sent the 90-day notices to the defendant"); *Deutsche Bank Nat'l Tr. Co. v. LoPresti*, 203 A.D.3d 883, 885 (2d Dep't 2022) (deeming evidence insufficient where neither plaintiff's counsel nor a representative of the loan servicer averred by affidavit "that they had personal knowledge of the mailing, or that the mailing was sent by both certified mail and first-class mail" and neither described any standard office procedure designed to ensure that the notices were mailed, and where no domestic return receipts for the mailings were submitted in support of the motion).

The parties also dispute the sufficiency of the contents of the § 1304 notice. RPAPL § 1304(2) mandates that the 90-day notices "shall contain a current list of at least five housing counseling agencies serving the county where the property is located from the most recent listing available from department of financial services." RPAPL § 1304(2). Here, the notices categorize the agencies by "region" in New York State and,

within those headings, organize the agencies by "county." Within the Long Island region, three agencies are labeled as "Nassau County," the county in which the Subject Property is located, and another three as "Suffolk County." (*See* 90-Day Notices). In other words, the 90-day notices are facially defective in that they appear to indicate only three—and not five—of the agencies serve Nassau County. And courts have found this exact defect fatal. *E.g.*, *CIT Bank, N.A. v. Donnatin*, No. 17-CV-02167, 2020 WL 248996, at *4 (E.D.N.Y. Jan. 16, 2020). Indeed, in its prior order the Court advised CIT that, in light of this precedent, "any new motion for default or summary judgment will have to address this apparent shortfall under § 1304(2)." *McDonnell*, 2020 WL 13157556, at *3. Where the § 1304 notice is challenged for failure to list a sufficient number of housing counseling agencies that serve the borrower's community, "it is the plaintiff's burden, on its motion for summary judgment" to submit evidence that the agencies actually serve the county wherein the borrower resides. *USBank Nat'l Ass'n v. Haliotis*, 185 A.D.3d 756, 758 (2d Dep't 2020). In response, CIT now maintains that agencies listed under other headers—for example, two of the "Suffolk County" agencies, and another two under the "New York City Region" header—do in fact serve Nassau County as well. (Rule 56.1 Stmt. ¶ 12; Reply ¶¶ 6–7). In support of its position, CIT submitted printouts from those agencies' websites indicating that they service Nassau County, or some larger geographic area that embraces Nassau County. (*See* Web Printouts, attached as Ex. O to Pl.'s Mot.). The McDonnells contend that the notices give no explicit indication to the recipient that they service Nassau County—for example, one only has "Suffolk" in its name—and, in any event, such proof only signifies that those agencies serve Nassau County at present—post-dating the filing of the litigation— not when the notices were allegedly sent in 2017. (*See* McDonnell Aff. ¶ 8). It is

necessary to know whether the agencies at issue were included in the NYS Department of Financial Services' list of approved agencies at the time of the alleged mailing, but that information is not present in the record. This is a sufficient independent basis to deny summary judgment.

II.    Default Judgment

    A.    Legal Standard

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment." *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* 55(b)(2).

Whether to enter a default judgment is committed to the discretion of the district court, within the limits articulated by the Second Circuit. *Enron Oil*, 10 F.3d at 95 ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."). That is, the Second Circuit "ha[s] a strong preference for resolving disputes on the merits" and has cautioned that "a default judgment is the most severe sanction which the court may apply." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations omitted).

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4, *6–*7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498, at *1 (Sept. 23, 2015). For example, an allegation is not "well-pleaded" if it is contradicted by other evidence put forth by the plaintiff. *See id.* at *6–*7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does

not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

B. <u>Liability</u>

"The necessary parties to a foreclosure action are those whose interest is claimed to be subject and subordinate to the plaintiff's lien, such as the record owner or person having an estate or interest in the property or one holding a later lien." *Toiny LLC v. Gill*, No. 18-CV-40, 2022 WL 4118520, at *3 (E.D.N.Y. Sept. 9, 2022) (quotations omitted); *see also* RPAPL § 1311. This rule "derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." *NC Venture I, L.P. v. Complete Analysis, Inc.*, 22 A.D.3d 540, 542 (2d Dep't 2005) (quotations omitted); *Bayview Loan Servicing, LLC v. Sulyman*, 130 A.D.3d 1197, 1199 (3d Dep't 2015) ("We find that decedent's estate is therefore a necessary party to this action, as the rights, interests and equities of all of the parties claiming an interest in the mortgaged premises should be settled and determined before any judgment of foreclosure and sale is entered." (quotations, citations, and alterations omitted)). "[T]o adequately allege liability as to a non-mortgagor defendant and extinguish their interest in a property, the complaint must allege 'nominal liability'— that any judgments the non-mortgagor defendant has against the mortgagor defendant, if asserted as a lien on the mortgage property, is subordinate to the plaintiff's lien." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311, 2019 WL 2233828, at *7 (E.D.N.Y. May 22, 2019) (collecting cases). "When default judgment is entered against a defendant with nominal interest in a property, that defendant's interest in the property is extinguished." *White*, 2019 WL 4014842, at *6; *see also CIT Bank, N.A. v. O'Sullivan*,

No. 14-CV-5966, 2016 WL 2732185, at *9 (E.D.N.Y. May 10, 2016) ("Courts regularly enter default judgment in foreclosure actions against defendants with 'nominal interests' in the relevant property, such as parties holding liens that are subordinate to the plaintiff's interest." (citations omitted)).

CIT named as defendants the Public Administrator of Nassau County, the heirs to the Estates of George A. Fox and George W. Fox—Patricia Vivirito, Debra Fox, Michael Fox, and Christina Fox Lord—and a potential judgment creditor, Cach LLC (together, the "Non-Mortgagor Defendants"). CIT properly served a summons and the Amended Complaint on each of these parties: Patricia Vivirito and Debra Fox were served personally; Christina and Michael Fox were served by leaving a copy with a resident of "suitable age and discretion" and then mailing a copy via USPS; the Public Administrator was served via an authorized agent; and Cach LLC was served through the New York Secretary of State's Office. (*See* Summonses Returned Executed, Dkt. Nos. 33–35, 37–40). Notwithstanding this notice and service, the Non-Mortgagor Defendants did not appear, did not respond to the Amended Complaint, and have not in any way attempted to defend themselves. As a result, the Clerk entered a default against the Non-Mortgagor Defendants on May 7, 2021. (Entry of Default dated May. 7, 2021, Dkt. No. 59).

Moreover, CIT has sufficiently alleged nominal liability against these Non-Mortgagor Defendants. (Am. Compl. ¶ 12 ("Defendants claim to have, or may claim to have, an interest in or lien upon the Property or some part thereof, and any such lien or interest is subject and subordinate to the lien of the Mortgage.")). *See, e.g.*, *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *4 (E.D.N.Y. May 9, 2016) (finding that plaintiffs adequately pled defaulting defendants' nominal liability

where amended complaint alleged "each of the Defaulting Defendants' interest in the Subject Property 'accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage'").

The non-appearing Defendants' failure to respond to these allegations establishes CIT's entitlement to a default judgment against them. *See e.g.*, *Valencia*, 2022 WL 872506, at *4 (recommending default judgment against non-mortgagor defendants where the complaint alleged that the parties had liens subordinate to the plaintiff's); *White*, 2019 WL 4014842, at *6 (same).

However, default judgment against Defendant Cach LLC should be denied. Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought at the . . . last known business address of such party (if a person other than an individual)," and that "[p]roof of such mailing shall be filed with the Court." Loc. Civ. R. 55.2(c). CIT's failure to do so requires the motion to be denied. The affirmation of service attached to CIT's motion papers does not provide that Cach LLC was served. (*See* Affirmation of Service dated Jan. 31, 2022, attached as Ex. 25 to Pl.'s Mot.). Upon the Court's inquiry, counsel for Plaintiff responded that it "inadvertently left their address off the affidavit of service." (Decl. in Resp. to OTSC ¶ 5). Without an address, the affidavit of service does not establish that service was proper. *See, e.g.*, *United States v. Hamilton*, No. 18-CV-2011, 2019 WL 6830318, at *3 (E.D.N.Y. Nov. 26, 2019) (finding default judgment motion procedurally defective under Local Rule 55.2(c) where plaintiff failed to demonstrate motion papers were mailed to the defendant, and the filing was devoid of an affidavit of service, "or any other form of proof, representing that the motion was served"), *report and recommendation adopted*, 2019 WL 6828276, at *1 (Dec. 13, 2019). And as such,

the motion for default judgment against the judgment creditor should be denied.  *E.g.*, *id.*

Thus, the Court recommends that default judgment be granted as against the Public Administrator of Nassau County, Patricia Vivirito, Debra Fox, Michael Fox, and Christina Fox Lord, and their interests in the Subject Property be extinguished.  *See, e.g.* *White*, 2019 WL 4014842, at *6 (recommending the denial of summary judgment against borrower because "questions of fact remain regarding Plaintiff's compliance with RPAPL § 1304's mailing requirement" but the granting of default judgment against non-mortgagor defendants where the complaint contained "well-pleaded allegations of nominal liability").  But the Court recommends that default judgment against Cach LLC be denied.

<u>CONCLUSION</u>

For the reasons described above, the Court respectfully recommends that CIT's motion for summary judgment be denied and default judgment be granted in part.[8]  The

---

[8] The common practice in this District following a denial of summary judgment in foreclosure cases is to hold an evidentiary hearing on the limited issue of compliance with RPAPL § 1304.  *E.g.*, *Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919, 2020 WL 5200903, at *3 (E.D.N.Y. Sept. 1, 2020) (denying plaintiff's motion for summary judgment and referring the matter "to Magistrate Judge Reyes to conduct an evidentiary hearing on the sufficiency of the bank's RPAPL § 1304 notice") (adopting report and recommendation); Order dated May 27, 2022, *CIT Bank, N.A. v. Valerio*, No. 16-CV-06644 (E.D.N.Y.) ("Whereas defendants contend that plaintiff has failed to establish, as a matter of law, that it complied with the notice requirements of NY RPAPL §1304, which requirement is a condition precedent to the commencement of a foreclosure action in New York, the undersigned hereby respectfully REFERS this case to the assigned magistrate judge to schedule a traverse hearing where the parties shall be prepared to present testimony and documentary evidence at the hearing." (citation omitted)).  As such, the next step in the case would be for a hearing to be held in which CIT could establish compliance with RPAL § 1304.  Alternatively, if CIT believes it cannot, at an evidentiary hearing, establish such compliance, it may dismiss the current case against the McDonnells and initiate a new foreclosure action after first providing

Court also recommends that the default entered against Karen McDonnell be vacated by the Clerk of Court.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)). Plaintiff is directed to serve a copy of this Report and Recommendation on all Defendants and file proof of such service on the record.

*      *      *

Separate and apart from the above, CIT's pending motion to have U.S. Bank substituted as plaintiff, (Mot. to Substitute Party dated Oct. 20, 2022, Dkt. No. 80), is granted. Federal Rule 25(c) provides that, in the case of any transfer of interest, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Substitution of a successor in interest or its joinder as an additional party under Rule 25(c) is generally within the sound discretion of the trial court." *Organic Cow, LLC v. Ctr. for New England Dairy Compact Rsch.*, 335 F.3d 66, 71 (2d Cir. 2003) (quotations omitted). There must, of course, be a transfer of the

---

proper notice to them. *E.g.*, *CitiMortgage, Inc. v. Moran*, 188 A.D.3d 407, 408 (1st Dep't 2020); *Kearney*, 42 Misc. 3d at 376–77. It may also attempt to obtain default judgment against Cach LLC through a renewed attempt at service.

interest.  *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996) (holding that Rule 25(c) "discretion may not be abused by allowing substitution in the absence of a transfer of interest").  No party has opposed the motion to substitute.

Under New York law, "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."  *JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142 A.D.3d 643, 644–45 (2d Dep't 2016).  CIT has submitted a sworn affidavit that "U.S. Bank has been the owner of the Note and Mortgage since June 30, 2021 and remains in possession of the Note."  (Fox Aff. ¶ 9).  CIT also attached as an exhibit a copy of the assignment of the mortgage to U.S. Bank.  (*See* Assignments of Mortgage).  This is sufficient to demonstrate that U.S. Bank is a successor-in-interest to CIT and the interest has transferred.  *See Ditech Financial LLC v. Ragusa*, No. 19-CV-1714, 2020 WL 6118827, at *5 (E.D.N.Y. Oct. 16, 2020) ("Here, Plaintiff's counsel represents that Ditech physically delivered the Promissory Note, Mortgage, and Home Affordable Modification Agreement to Loan Care and submitted a copy of Ditech's assignment of the Mortgage . . . .  This is sufficient to show that LoanCare holds the requisite interest in this action." (citations and quotations omitted)); *Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13-CV-253, 2017 WL 10088188, at *4 (E.D.N.Y. Aug. 18, 2017) (granting motion to substitute successor-in-interest as plaintiff in mortgage foreclosure action where plaintiff submitted declaration that the successor-in-interest has physical custody of the note).

The motion to substitute, therefore, is granted, and the Clerk of Court is directed to substitute U.S. Bank Trust National Association for CIT Bank, N.A. in the case caption.

SO ORDERED.

/s/ *Sanket J. Bulsara* February 2, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York